## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ALANNAH BLANKS, on behalf of herself and
others similarly situated

                                     File No.:   18-cv-02291-CMA-KMT

       Plaintiff,

v.

MACHOL & JOHANNES, LLC

       Defendant.

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT INCLUDING MOTION FOR ATTORNEY'S FEES AND COSTS AND PAYMENT OF SERVICE AWARD FOR THE CLASS REPRESENTATIVE

The settlement now before this Court for final approval will provide approximately 682 Colorado consumer claimants $75.57 each in statutory damages, which compares favorably with other recent class settlements under the Fair Debt Collection Practices Act ("FDCPA"). The class's aggregate recovery of $51,540 is significant because it may exceed the best possible outcome at trial, even assuming complete victory for Alannah Blanks ("Plaintiff") and the class. Further, Machol & Johannes LLC ("Defendant") separately will pay $5,000 to Plaintiff, which includes her maximum potential individual statutory damages recovery under the statute as well as a modest incentive award as class representative.

As of today's, date, and after direct mail notice to each class member, only one person has requested exclusion from the settlement. No class members objected to the settlement. In addition, Defendant was to have provided notice of this settlement to the United States Attorney General and the Attorney General of Colorado pursuant to the Class Action Fairness Act ("CAFA")[1]. Given this favorable result—and the widespread support for the settlement by the class members themselves—Plaintiff respectfully requests that this Court approve the settlement and approve her request for a modest incentive award of $5,000, to be paid separately from monies paid to class members.

Plaintiff also respectfully requests that this Court approve Class Counsel's request for attorney's fees and costs in the total amount of $50,000. The requested fees and expenses are reasonable considering the results achieved and the time and effort that went into doing so.  As detailed below and in the Declaration of Thomas J. Lyons ("Lyons Decl."), this proposed fee request is eminently reasonable for this class action and is supported by the record and applicable law and thus should also be approved.

## I.    <u>INTRODUCTION</u>

Plaintiff, as representative of the conditionally certified class, by and through her attorney of record, and pursuant to Fed.R.Civ.P. 23, respectfully move this Court for an Order granting final approval of the class action settlement of all claims and entry of a final judgment, in accordance with the terms set forth in the Settlement Agreement and Release

---

[1] Unfortunately, Plaintiff learned today that Defendant failed to send out the CAFA notice in accordance with the Court's Preliminary Approval Order. Defendant will have to address this issue at the hearing or in a separate filing.

with slight modifications as will be more fully briefed below. (*ECF No. 34-1*).[2]    The
proposed Settlement of the above-entitled class action litigation is fair, reasonable,
adequate, and should be approved.

Plaintiff further respectfully moves this Court for an Order allowing payment of
Plaintiff's attorney's fees and costs and payment of the service award to the class
representative in accordance with the terms set forth in the Settlement Agreement and
Release. (*ECF No. 34-1*). For the reasons set forth below, Plaintiff respectfully requests
that the Court enter the [Proposed] Final Order Approving Class Action Settlement, which
will *inter alia*, approve the Settlement Agreement and Release between the parties, approve
the allocation of the Settlement proceeds, including payment of Class Counsel's attorney's
fees and costs as well as Plaintiff's class representative award.  Defendant does not oppose
the relief requested by these Motions.

## II.    BACKGROUND

Plaintiff's Complaint alleges that Defendant, in connection with state court
collection proceedings, publicly filed Plaintiff Blanks and many other similarly situated
Colorado consumers' confidential consumer reports in violation of the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*, and the Fair Debt Collection Practices
Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Specifically, the Complaint alleges that Plaintiff
Blanks obtained a Discover Bank ("Discover") credit card, and through an offer provided
by Discover, Plaintiff's TransUnion credit score would appear on her monthly billing

---

[2] Unless otherwise noted, all capitalized terms used here have the same definition as that
provided in the Settlement Agreement. (*ECF No. 34-1*).

statements. When Plaintiff became unable to pay the balance of her credit card account, Discover retained Defendant to collect the unpaid balance. As part of those collection efforts, Defendant filed a state court collection complaint and attached to its complaint the monthly billing statements containing Blanks' consumer report.[3]

Plaintiff's Complaint asserts one claim for violation of the FCRA and one claim for violation of FDCPA and was brought on behalf of two classes of Colorado consumers: (1) all Colorado consumers who have had their TransUnion consumer reports/credit scores published in various judicial court actions by Defendant within two years of the date of the filing of the Action—September 6, 2018 (the "FCRA Class"); and (2) all Colorado consumers who have had their TransUnion consumer reports/credit scores published in various court actions by Defendant within one year of the date of the filing of this Action (the "FDCPA Class").

With respect to relief, the Complaint requested (1) an award of appropriate statutory and punitive damages for violation of the FCRA; (2) an award of costs and reasonable attorney's fees under the FCRA; (3) an order enjoining the Defendant from further violations of the FCRA relative to the inclusion of consumer reports; (4) an order instructing Defendant to move to seal all class members' Colorado district court collection files; (5) an award of actual and statutory damages for violations of the FDCPA; and (6) an award of reasonable attorney fees and costs under the FDCPA.

---

[3] Defendant has ceased the practice of attaching unredacted statements to complaints in collection actions.

**A.  Defendant's Motion to Dismiss.**

On October 19, 2018, Defendant filed a Motion to Dismiss Plaintiff's Complaint (*ECF #11*) under Rule 12(b)(1) for lack of standing, and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  With respect to lack of standing, Defendant argued that Plaintiff failed to allege that she suffered a concrete injury as that term was defined in *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016).  As for her failure to state a claim for relief, Defendant argued that Defendant's disclosure of Plaintiff's credit score was not a violation of the FCRA because Defendant was, at worst, a downstream user of a credit report originally issued in compliance with the provisions of the Act.  Defendant also argued that Plaintiff did not plead any facts that would even suggest that Defendant committed acts prohibited under the FDCPA.  Plaintiff served comprehensive written discovery on Defendant November 8, 2018.  The parties believe they were fully and adequately informed of all facts necessary to evaluate the case for settlement.

**B.  The Parties Explore Settlement While the Motion to Dismiss is Pending.**

After Defendant filed its Motion to Dismiss, but before Plaintiffs' deadline to respond thereto, the parties agreed to engage in settlement negotiations.  On October 23, 2018, Plaintiff's counsel delivered to Defendant's counsel its first proposed settlement demand. After several weeks of negotiations, the parties agreed that settlement was possible.  Accordingly, Plaintiff filed an unopposed motion to enlarge the briefing schedule on the motion to dismiss. (*ECF No. 25*). On December 10, 2018, the parties reached an agreement on the terms of a class settlement subject to the execution of a Stipulation and Agreement of Settlement and Court approval.   Immediately thereafter the parties jointly

filed the Notice of Settlement and Request for Order Staying Plaintiff's Response to Defendant's Pending Motion to Dismiss. (*ECF No. 28*).

**C.**  **Summary Of The Settlement.**

Plaintiff and Defendant (collectively "the Parties") have entered into a Settlement Agreement and Release to resolve all claims for the total amount of One Hundred Three Thousand Two Hundred Thirty-Four Dollars ($103,234).  The proposed Settlement of the above-entitled class action litigation is an excellent result and in the best interests of the Class.  The proposed Settlement is fair, reasonable, adequate, and, accordingly, should be granted final approval by the Court.  The Settlement was reached as a result of rigorous, arm's length negotiations by the Parties and their counsel.

Plaintiff agreed it was in the best interest of the Class to settle based on counsels' investigation and analysis of the facts and law, and after having weighed the benefits to the Settlement Class associated with a prompt and certain resolution of the action against the significant cost, risk and delay that continued prosecution of the action could involve.  This is especially true given defense counsel's promise that the motion to dismiss would be re-filed if no resolution was reached prior to the entry of final judgment.  (*ECF No. 34-1*).

Defendant vigorously denied, and continues to deny, all claims asserted in the Action and denied all allegations of wrongdoing and liability but agreed to settle on the terms set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.  *Id.*

Under the Settlement, Defendant has agreed, among other things, to pay the 682 class members a sum certain amount of $75.57.  The Parties agreed certain additional payments

deductions would be made by the Defendant subject to the Court's approval. These payments include:

- "Incentive Award" in the amount of $5,000 for the Named Plaintiff for her services as representative of the class;
- Settlement Administrator Costs" to be determined;
- "Class Member Settlement Payment" in an amount of $75.57 per Class Member[4], with all unclaimed funds to be awarded to the Legal Aid Foundation of Colorado; and
- "Attorney Fees and Costs," which the Parties agree shall not exceed $50,000.00.

(*ECF No. 34-1, pg. 6*).

As indicated above, the parties request additional language be added to the Court's Order of Final Approval as the Settlement Agreement to address how any possible uncashed or returned checks or remaining funds would be handled. As reflected in the Settlement Agreement, the Parties agreed the Initial Distribution checks would expire 120-day after their issuance. (*ECF No. 34-1*). What the parties intend is any funds uncashed checks after the 120 days expiration period would be distributed to the Legal Aid Foundation of Colorado as *cy pres*.[5] In this respect, no Remaining Funds will revert back to Defendant.

In addition, and as further set out in the Settlement Agreement, Defendant will redact all court records that contain Class Members' personal information. (*ECF No. 34-1, pg. 6*). Plaintiffs and the Settlement Class members will release all claims that are related in any way

---

[4] It is understood by the Parties that the membership of both Classes is similar and substantially overlap. For the purpose of the Class Member Settlement Payment, Class Members that are members of both Classes shall only receive one payment of $75.57.

[5] Defense counsel has reviewed this filing prior to its submission so agrees this is how the parties intended the funds would be distributed.

to the use or disclosure of their personal information in any small claims action commenced against them by Defendant.  (*ECF No. 34-1, pg. 6*).

Analytics continued to act as class administrator after the Court preliminarily approved this class.  The requisite Settlement Notices were mailed to all 682 class members and 44 were returned as undeliverable and the Settlement webpage was created.  (*ECF No. 38 – Declaration of Christopher Amundson*).  As of the date of this filing, no objections have been filed, however one exclusion was filed and sent to all counsel of record. (*Id*.).

Plaintiff is well positioned to request final approval of this Settlement after having litigated this case.  During that time, Class Counsel spent time researching and investigating Plaintiff's claims and Defendant's asserted defenses.  (Lyons Decl.).  Class Counsel further conducted discovery and researched Defendant's practices, policies and procedures.  *Id.* This research and investigation provided Class Counsel with a thorough understanding of the strengths and weaknesses of this case, and the ability to readily evaluate the risks associated with it, as well as the fairness of the proposed Settlement, which was reached after negotiations.  *Id.*

With this thorough understanding, Plaintiff and Class Counsel submit that the Settlement is an excellent outcome for Class Members.  *Id.* The benefits and value of the relief to Class Members must be analyzed in light of the risks of protracted and contested litigation, including a possible trial on punitive damages and a promised appeal. *Id.* Thus, the Parties submit that the proposed Settlement is in the best interests of Class Members and warrants final approval.

**D. Award of Class Counsel Attorney's Fees and Costs and Payment of Plaintiff's Class Representative Service Award.**

Defendant has agreed to pay and not object to a motion by Class Counsel for an award of attorney's fees not to exceed Fifty Thousand Dollars ($50,000). Defendant further agreed to pay class administration and litigation costs in an estimated amount of $7,314.00 and a service award to the class representative in the amount of Five Thousand Dollars ($5,000). The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement payments to the class members.

## III. ARGUMENT

### i. THE PROPOSED SETTLEMENT WARRANTS APPROVAL

Under Fed. R. Civ. P. 23(e)(2), a Court may approve a class action settlement if it is "fair, reasonable and adequate." There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co., No. 92 C 4374*, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995). As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

It is axiomatic that the federal courts look with great favor upon the voluntary

> resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998).

The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

## ii. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), any settlement agreement that binds absent class members requires judicial approval and a determination that the settlement is "fair, reasonable and adequate." The Tenth Circuit applies a four-factor test to determine whether this standard has been met. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). The relevant factors are:

a) whether the proposed settlement was fairly and honestly negotiated;
b) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
c) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
d) the judgment of the parties that the settlement is fair and reasonable.

*Id.* (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993)). Because each of

these factors is satisfied here, this Court should approve the Settlement. "The law favors compromise and settlement of class action suits." *Geiger v. Sisters of Charity of Leavenworth Health Sys., Inc.*, No. 14-2378, 2015 WL 4523806, at *2 (D. Kan. July 27, 2015).

### A. THE SETTLEMENT SHOULD BE FINALLY APPROVED.

### 1. <u>THE SETTLEMENT WAS NEGOTIATED FAIRLY AND HONESTLY.</u>

Here, the parties resolved this matter only after participating in protracted arm's-length negotiations after hard-fought litigation. *See Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2013 WL 1010384, at *36 (D.N.M. Feb. 27, 2013) ("The Court has previously determined arms-length negotiations absent any allegations of collusion demonstrate that a class action settlement was fairly and honestly negotiated.").

The parties were thus able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement to further, and potentially protracted, litigation. Counsel, who have substantial experience in litigating class actions, and the Court are therefore adequately informed to evaluate the fairness of the proposed settlement. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

There is no reason to find otherwise on final approval. No Settlement Class Member has objected to the way the Settlement was reached, and it is objectively evident that the Settlement was negotiated fairly and honestly.

As noted above, the Parties' Settlement was reached after adversarial litigation, including motion practice on Defendant's motion to dismiss and discovery. These circumstances are indicative of a fairly and honestly negotiated Settlement free of collusion. *See Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

## 2. THE OUTCOME WAS UNCERTAIN GIVEN DISPUTED QUESTIONS OF LAW AND FACT.

To assess the strength of the class claims for purposes of determining the reasonableness and adequacy of a settlement, the Court necessarily must engage in some consideration of the merits, but the Court should "not decide the merits of the case or resolve unsettled legal questions." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 676 (D. Kan. 2009); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *10 (W.D. Okla. Oct. 27, 2008). The very purpose of a settlement is to reach a mutually- acceptable resolution of disputed claims, and "[t]he object of settlement is to avoid, not confront, the determination of contested issues: therefore, the approval process should not be converted into an abbreviated trial on the merits." *McNeely*, 2008 WL 4816510, at *10.

Here, although Plaintiff believes she would ultimately succeed on her claims, recovery was far from assured. Among other disputed issues, the FCRA is not a strict liability statute, and a plaintiff can recover statutory damages only where the defendant has acted willfully. *See* 15 U.S.C. § 1681n(a)(1). Thus, if the litigation had continued, Plaintiff would have been required to prove not only that Defendant violated the FCRA, but also that Defendant's violations were willful.

This is a high standard, and FCRA plaintiffs can lose on willfulness even after a successful verdict at trial. *See, e.g.*, *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (reversing jury verdict finding conduct to be willful under the FCRA); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment."). To prove willfulness, Plaintiff would need to establish that Defendant acted in reckless disregard of its statutory obligations. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007). This would require demonstrating that Defendant's interpretation of the statute "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Thus, if the litigation had continued, Defendant would have vigorously contested willfulness.

Although Plaintiff believes she ultimately would have prevailed on this issue, there is some difference in opinion among district courts as to whether the statute may be reasonably read to allow the inclusion of certain types of extraneous information in addition to the authorization and disclosure. *See, e.g.*, *Geiling v. Wirt Financial Services,*

*Inc.*, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015), *aff'd* 2017 WL 6945559 (6th Cir. June 8, 2017); *Schmitz v. Wetsch Abbott Osborn Van Vliet PLC*, No. 4:18-cv-15 (S.D. Iowa Jan. 15, 2019);  and *Van Gorp v. Commerce Bank*, 2017 WL 8792709 (S.D. Iowa Nov. 13, 2017) v. *Kleczewski v. Messerli & Kramer, P.A., et al.,* 2:18-cv-00422-PP - *Messerli & Kramer's Memorandum in Support of Motion to Dismiss at p. 5 (ECF NO. 20) and Kleczewski v. Messerli & Kramer, P.A., et al.,* 2:18-cv-00422-PP - *Court Minutes and Order dated January 23, 2019 (ECF NO. 38)*. If this Court or an appellate court were to ultimately conclude that the statute could reasonably be interpreted to allow extraneous information in the disclosure, Plaintiff and the class would not be entitled to statutory damages. *See Safeco*, 551 U.S. at 69. Given these uncertainties, among others, and the risks of continued litigation, it was reasonable and prudent for Plaintiff to negotiate the present Settlement.

While Plaintiff did not secure summary judgment as to liability, there remains some uncertainty as to the class's damages, Defendant's prospects for appeal, and, consequently, the ultimate outcome of this litigation. Moreover, the FDCPA provides limitations on recoverable damages as follows:

> [I]n the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]

15 U.S.C. § 1692k(a)(2)(B).

Here, based on the evidence obtained from Defendant, the FDCPA's limitation on class damages of the lesser of $500,000 or one percent of Defendant's net worth could

have resulted in a recovery below the $51,540 settlement fund achieved. Indeed, even assuming a class victory at trial, there was no guarantee of full statutory damages. This is because the FDCPA's damages provision is permissive rather than mandatory, meaning the law provides for statutory damages awards *up to* certain amounts—$1,000 for Plaintiff, and one percent of Defendant's net worth for the class—after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2).

Correspondingly, even provided a victory in the class's favor, this Court may still have awarded class members little in the way of statutory damages, or even potentially no damages at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). In contrast, the relief provided by the parties' settlement is both immediate and substantial.

Given these considerations, and that participating class members stand to receive $75.57 each, approval of the settlement is appropriate to avoid the uncertainties of continued litigation, delay, and potential appeals. *See Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) ("Settlement provides a certain and immediate benefit to the class members and outweighs the risk and

cost of a trial on the merits. The prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.").

    **3.**   **THE VALUE OF THE RECOVERY IS EXCELLENT WEIGHED AGAINST THE RISKS AND DELAY OF CONTINUED LITIGATION.**

Considering the above risks to recovery and the inevitable delay of protracted litigation, the value of the recovery is excellent. The gross monetary recovery of $75.57 per class member is impressive, given the fact that Plaintiff likely could have recovered substantially less per class member even if she had prevailed through trial. *See* 15 U.S.C. § 1692k.[4] This recovery is very close to the floor of FCRA statutory damages ($100-$1,000) (*See* 15 U.S.C. § 1681n) and almost 10% of statutory damages for the FDCPA ($0-$1,000) (*See* 15 U.S.C. § 1692k). It is also notable that the monetary relief in this case will be paid automatically without the need for Settlement Class Members to submit a claim form or take any action.

The recovery here is excellent when compared to most class action cases. *Cf. In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent of potential damages was reasonable); *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery ... seems to be within the targeted range of reasonableness."). Moreover, the Settlement will provide class members with an *immediate* recovery, without having to wait for the conclusion of the litigation and any appeals. "To most people, a dollar today is worth a great deal more than a dollar ten

years from now." *Lane v. Page*, 862 F. Supp. 2d 1182, 1249 (D.N.M. 2012) (quoting

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).

Continuing the litigation in this case would have significantly delayed relief to

Settlement Class Members, even assuming they had been successful. The Parties would

have engaged in additional discovery, class certification motion practice, summary

judgment motions, and a trial on the merits. Moreover, assuming the claims succeeded,

Defendant could have appealed any judgment entered against it, resulting in further

expense and delay. By entering into a settlement now, the Parties saved precious time and

costs, and avoided the risks associated with further litigation. *See Belote v. Rivet Software,*

*Inc.*, 2014 WL 3906205, at *4 (D. Colo. Aug. 11, 2014) ("By reaching a settlement at this

stage, Plaintiff seeks to avoid significant expense and delay and ensure recovery for the

Class in a prompt and efficient manner.").

It is axiomatic that "the law should favor the settlement of controversies and should

not discourage settlement by subjecting a person who has compromised a claim to the

hazard of having the settlement proved in a subsequent trial...."  *Grady v. de Ville Motor*

*Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). And this is particularly true in the context

of class actions, which are notoriously unpredictable and often slow to resolve. *See Wal-*

*Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful

of the strong judicial policy in favor of settlements, particularly in the class action

context."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class

action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst*

*v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point

out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits . . . ."); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Here, the settlement requires that Defendant pay the 682 class members an amount of $51,540, with each participating class member receiving $75.57. Further, separate and apart from the class award, Defendant also will pay: (1) the costs and expenses of administrating the class action settlement; (2) an award of attorney's fees and expenses to class counsel in an amount not to exceed $50,000, subject to this Court's approval; (3) an incentive award to Plaintiff in the amount of $5,000, which includes statutory damages for both the FDCPA and the FCRA, subject to this Court's approval.

Also, significantly, given the damages cap applicable to FDCPA class actions, this settlement compares favorably to comparable cases brought under the FDCPA. *See, e.g.*, *Beck v. Thomason Law Firm, LLC*, No. 16-570, ECF No. 24 (D.N.M. Oct. 10, 2017) ($68.70 per class member); *Considine v. Sharinn & Lipshie, P.C.*, No. 15-4816, ECF No. 40 (E.D.N.Y. Aug. 8, 2017) ($24.17 each); *Marcoux v. Susan J. Szwed, P.A.*, No. 15-93, 2017 WL 679150 (D. Me. Feb. 21, 2017) ($42 each); *Cobb v. Edward F. Bukaty, III, PLC*, No. 15-335, 2016 WL 4925165, at *4 (M.D. La. Sept. 14, 2016) ($52.28 each); *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079 (E.D. Pa. Sept. 13, 2016) ($10.92 each); *Kausch v. Berman & Rabin, P.A.*, No. 15-537, ECF No. 33 at 3 (E.D. Mo. July 8, 2016) ($39.06 each); *Chamberlin v. Mullooly,*

*Jeffrey, Rooney & Flynn, LLP*, No. 15-2361, ECF No. 44 (D.N.J. June 2, 2016) ($12.62 each); *Schuchardt*, 314 F.R.D. at 678 ($15.10 each); *Whitford v. Weber & Olcese, P.L.C.*, No. 15-400, 2016 WL 122393 (W.D. Mich. Jan. 11, 2016) ($10 each).

Moreover, by receiving approximately $75 each, class members here may fare better than if they had pursued individual claims—and without the time, effort, and expense of doing so. For example, in *Crumel v. Kross, Lieberman & Stone, Inc.*, the court granted summary judgment in favor of the plaintiff on his FDCPA claims, and awarded $50 in damages. No. 5:14-cv-80-BR, 2015 WL 1565432, at *8 (E.D.N.C. Apr. 8, 2015). Likewise, the court in *Carroll v. Paul Law Office, PLLC*, awarded the plaintiff $50 where the defendant debt collector attempted to collect on an already-settled account in violation of the FDCPA. No. DKC 12–2041, 2013 WL 4008873, at *3 (D. Md. Aug. 2, 2013). In contrast, participating class members here will receive $75.57 each, and without the need to file their own cases.

In any event, "[i]t has been held proper 'to take the bird in the hand instead of a prospective flock in the bush.'" *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citations omitted). Given the questions of law and fact that exist, and considering the amount of potentially recoverable money at stake for the class, the value of this settlement outweighs the mere possibility of future relief after protracted and expensive litigation. *See Shaw v. Interthink Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *3 (D. Colo. Apr. 22, 2015) ("Here, the Settlement involves fair and reasonable payments in light of the risks of further litigation.").

4. **THE REACTION OF THE CLASS IS POSITIVE, AND CLASS COUNSEL AND THE CLASS REPRESENTATIVE SUPPORT THE SETTLEMENT.**

The Settlement Class has responded positively to the Settlement. Among more than 862 Settlement Class Members, only one excluded himself, and there were no objections. These are small numbers in comparison to the size of the Settlement Class, which weighs in favor of final approval. *Williams v. Sprint/United Mgmt. Co.*, 2007 WL 2694029, at *4, (D. Kan. Sept. 11, 2007) ("[W]hile ... not controlling, a relatively small number of objectors can be taken as some indication that the class members as a group did not think the settlement was unfair." (quotations and internal citations omitted)).

Finally, Plaintiff proudly notes that only one class member has excluded himself from the settlement. The lack of any exclusions underscores the adequacy of the settlement, and further supports final approval. *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 289 (D. Colo. 1997) (noting that "only 114, or 6.4 per cent of the Claimants, objected. Certainly, in a large class action case it is to be expected that at least some class members will object. Further, many courts conclude that a settlement can be fair even despite a large number of objections."). As well, "[t]he lack of significant objections is powerful evidence of the fairness of a proposed settlement." *In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *7 (S.D. Ohio Aug. 18, 2009)*; Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.").

Further, a court should afford great weight to the recommendation of counsel who are most closely acquainted with the facts of the respective litigation. *See Lowery*, 2013 WL 1010384, at *39 ("The Court has previously determined that the opinion of experienced counsel that a settlement is fair is of great weight to the Court's decision to approve a settlement."); *Marcus v. Kan. Dep't of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, Class Counsel firmly believes the settlement—which was the product of investigation, litigation, and arm's-length negotiation—is fair, reasonable, and adequate. Moreover, Class Counsel has significant experience in litigating consumer protection class actions. *See* Lyons Decl. ¶¶ 4-5 and Ex. A.  As both Plaintiff and Class Counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of the class, their judgment further supports approval of the final approval of settlement.

## 5. <u>THIS COURT SHOULD APPROVE THE AGREED UPON PAYMENT OF ATTORNEY'S FEES AND COSTS.</u>

As set out above, the parties agreed Class Counsel could petition this Court for an award of attorney's fees not to exceed Fifty Thousand Dollars ($50,000).  (*ECF No. 34-1, pg. 6*).  The parties also agreed costs for the Class Administrator in an estimated amount of

$7,314.00 would be paid by Defendant sperate and apart from what the class members receive. *Id.*

A.    **The FDCPA mandates an award of attorney's fees for successful consumer-plaintiff.**

As an initial matter, the FDCPA mandates an award of attorneys' fees to successful consumer-plaintiffs like Ms. Blanks to encourage private action and enforcement. 15 U.S.C. § 1692k(a)(3). That is, "[a]n award of attorney's fees to successful plaintiffs under the FDCPA is obligatory." *French v. Corp. Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007); see also *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("Given the structure of [the FDCPA], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.").

By including a mandatory fee-shifting provision in the statute, Congress has indicated that society has an important stake in assisting consumers who may not otherwise have the means to pursue these types of cases against debt collectors, and also in rewarding those attorneys who assist in that pursuit. The Ninth Circuit explained:

> Generally, litigants in the United States pay their own attorneys' fees, regardless of the outcome of the proceedings. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). However, "[i]n order to encourage private enforcement of the law ... Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute." *Id.* The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable "in the case of any successful action ... [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA's statutory language makes an award of fees mandatory.

*Camacho v. Bridgepoint Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

Also, significant, awards of attorneys' fees under federal statutes with fee-shifting provisions "are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *see also Lewis v. Kendrick*, 944 F.2d 949, 957 (1st Cir. 1991) ("We believe we made it clear that we were not departing from the recognized principle that the fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."). This is, in part, because a rule limiting an award of attorneys' fees to an amount proportionate to the damages recovered would seriously undermine the mechanism that Congress chose to enforce the FDCPA. *See Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (fee shifting is mandatory under the FDCPA because Congress "chose a 'private attorney general' approach to assume enforcement of the [statute]").

Echoing the Supreme Court's directive, district courts—in the context of actions filed under the FDCPA—have held that "[t]he disparity between the final award of damages and the attorneys' fees and expenses sought in this case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims." *Turner v. Oxford Mgmt. Services, Inc.*, 552 F. Supp. 2d 648, 656 (S.D. Tex. 2008); *see also, e.g.*, *Jones v. White*, No. 03-2286, 2007 WL 2427976, at *6 (S.D. Tex. Aug. 22, 2007) (awarding $265,769.15 for attorneys' fees incurred in connection with claims under the Americans with Disabilities Act, where the court awarded only $100 in statutory damages).

23

Indeed, the very purpose of the FDCPA's fee-shifting provision is to allow consumers to obtain competent counsel to pursue remedies, even for relatively small claims. And by providing the private bar with incentive to involve itself in consumer litigation like this, the federal government has also relieved itself of the costs of protecting consumers, while still ensuring that those consumers may avail themselves of their statutory rights. Thus, "[i]n order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 652. In other words, paying counsel less—for example, by proportioning a fee award to the amount of damages recovered—"is inconsistent with the Congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Id.* at 653.

As the First Circuit explained,

[t]his rule makes eminently good sense: a strict proportionality requirement would overlook entirely the value of other important litigation goals. That kind of rigidity would frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good.

*Spooner v. EEN, Inc.*, 644 F.3d 62, 69 (1st Cir. 2011) (citing *City of Riverside*, 477 U.S. at 578); *see also Washington v. Phila. Cnty. Ct. of C.P.*, 89 F.3d 1031, 1042 (3d Cir. 1996) (finding that a damages award is relevant to a fee award "not because of some ratio that the court ought to maintain between damages and counsel fees," but only as a measure of the plaintiff's success—that is, "[t]he amount of damages *awarded*, when compared with the amount of damages *requested*, may be one measure of how successful the

plaintiff was in his or her action," which "may be taken into account when awarding attorneys' fees").

Based upon this principle, district courts across the country have frequently awarded fees in FDCPA litigation outsizing the plaintiffs' recoveries. *See, e.g.*, *Archambault v. GC Servs. Ltd. P'ship*, No. 16-104, 2016 WL 6208395, at *5 (D. Me. Oct. 24, 2016) (approving fees of more than six times the damages recovery); *Alexander v. Coast Prof'l Inc.*, No. 12-1461, 2016 WL 861329, at *8 (E.D. Pa. Mar. 7, 2016) (attorneys' fees and expenses of $185,000 awarded in comparison to $9,000 class settlement fund); *Rhodes v. Olson Associates, P.C.*, No. 14-cv-00919-CMA-MJW, ECF No. 50 (D. Colo. Sept. 11, 2015) (Arguello, J.) (awarding $70,675.28 in attorneys' fees and expenses in comparison to $23,000 settlement fund); *Weissman v. Gutworth*, No. 14-666, 2015 WL 3384592, at *7 (D.N.J. May 26, 2015) ("Although Plaintiff's counsel will receive more than four times the common fund amount, this circumstance occurs in FDCPA class action settlements of this scale."); *Cope v. Duggins*, 203 F. Supp. 2d 650, 656 (E.D. La. 2002); ("[A]lthough the $25,000 attorney's fee seems to be out of proportion with the $8,000 that will be divided among the class members, this imbalance is principally attributable to the design of the FDCPA damages provision, specifically § 1692k(A)(2)(b)(ii), which caps the amount of damages in a class action lawsuit at the lesser of $500,000 or one percent of the net worth of the debt collector. Indeed, the Fifth Circuit has rejected a rule of proportionality between the fee awarded and the damages recovered in determining the amount of the award of attorney fees."); *Armstrong v. Rose Law Firm, P.A.*, No. 00-2287, 2002 WL 31050583, at *1 (D. Minn. Sept. 5,

2002)(awarding fees and costs in excess of $43,000—over the defendant's objection—
when the plaintiff had recovered only $1,000 in statutory damages).

**B.      The *Johnson* Factors Support The Reasonableness Of The Requested Fee And Expense Award.**

In this Circuit, courts utilize the twelve factors articulated by the Fifth Circuit in
*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), to assess
the reasonableness of an award of attorneys' fees in a class action. *See Ramah Navajo
Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1096 (D.N.M. 1999). The *Johnson* factors are:

> (1)   the time and labor involved; (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly; (4) the
> preclusion of other employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) any prearranged fee—this is helpful but not
> determinative; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the undesirability of
> the case; (11) the nature and length of the professional relationship with the
> client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717-19).

The Tenth Circuit, however, has noted that "[r]arely are all of the *Johnson* factors
applicable" in a particular case. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9
F.3d 849, 854 (10th Cir. 1993).

Here, an analysis of the *Johnson* factors overwhelmingly supports the requested
award of attorneys' fees and expenses.

1.    **The Time And Labor Required To Resolve This Matter Were Important As Class Counsel Have Amassed A Lodestar Of More Than $50,000 To Date— With Additional Work Remaining.**

Class counsel, Thomas J. Lyons Jr. of the Consumer Justice Center P.A. devoted considerable time and resources to this case, including: (a) conducting an investigation into the underlying facts regarding Plaintiff's and class members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to the claims and Defendant's defenses; (d) preparing and serving initial written discovery requests, and gathering documents and information relevant to Plaintiff's claims; (e) researching issues related to class certification, including strategies for how to best satisfy the requirements of Rule 23; (k) preparing notice documents to be disseminated to the class of this certified class action, and obtaining Court approval of the same; (f) working with Analytics LLC, the appointed class administrator, to effectuate the notice plan; (g) negotiating the parameters of the class action settlement; (h) preparing the parties' class action settlement agreement, along with the proposed settlement class notice; (i) preparing motion for preliminary approval of the class action settlement; (l) preparing motion for final approval of the class action settlement and motion for approval of an award of attorney's fees and reimbursement of litigation costs and expenses; (m) preparing a detailed declaration in support; (n) conferring with the class administrator to oversee the notice, claims, and administration process; and (o) repeatedly conferring with Ms. Blanks throughout this case.

As well, before this matter concludes, class counsel also will have (1) submitted any reply papers necessary in support of final approval and the fee and expense petition;

prepared for and attended the final fairness hearing set for May 29, 2019; (3) conferred with Analytics LLC to distribute settlement checks upon court approval; and (4) if necessary, confer with class members to answer questions or address concerns related to those checks. *See* Lyons Decl. In total, class counsel has spent more than 100 hours litigating this case to date, and anticipate spending, conservatively, an additional 25 hours to bring this case to its conclusion. *See id*. ¶7, Ex. B. As a result, class counsel expects to have spent at least 129.38 hours litigating this case in time it has been pending. *Id.*

Class Counsel's hourly rate of $450.00 per hour has been approved in similar attorney fee petitions in the following consumer protection class action cases: *Eggen v. WESTconsin,* 14-cv-873-bbc, Western District of Wisconsin (February 26, 2016); *Cassidy v. Active Sports*, 14-cv-3022 SER, District of Minnesota (April 6, 2016); *Nelson v. BMW Financial et al,* 15-cv-2661 SER, District of Minnesota (March 8, 2017); *Vonasek v. BOTW, et al,* 16-cv-342-DTS, District of Minnesota (January 30, 2018); *Swenson v. WESTconsin,* 16-cv-2344 MJD/HB, District of Minnesota (February 28, 2018); *Love Stone v. Aargon Agency,* 17-cv-2314-KMM, District of Minnesota (May 15, 2018); and *Clark v. JP Morgan Chase Bank, et al*, 17-cv-01069 SRN/KMM, District of Minnesota (December 12, 2018).

Given that Class Counsel has been appointed in numerous class actions, including FDCPA cases; courts have awarded him the same rate requested here in previous cases; and courts in various Districts found similar rates appropriate in FDCPA cases, Class Counsel's requested rates are reasonable. *Rhodes v. National Collection Systems,* 1:15-cv-02049-REB-KMT (D. Colo. May 11, 2018). Defendant shall pay Class Counsel up to

$50,000 for attorney's fees and expenses, which is based in part upon Class Counsel's reasonable hourly rate of $450 per hour.[6] The result is a total expected lodestar of $59,430.60, which exceeds the requested fee and expense award. *Id.*, ¶ 7, Ex. B. Therefore, the requested fee is reasonable both under the first *Johnson* factor.

### 2.    <u>The Ultimate Questions In This Case Were Disputed, And The Final Outcome Was Uncertain.</u>

The second and third factors—the novelty and difficulty of the questions presented and the skill required to litigate the action—are necessarily intertwined and demonstrate the reasonableness of a one-third fee. Several factors rendered this case complex enough to require skilled class-action counsel.

First, class actions are inherently complex. *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008). Compared to individual cases, class actions by their very nature involve unique procedural hurdles, more extensive discovery, and larger stakes. Litigating a case in light of the class certification hurdle requires experience and adds additional layers of complexity to any case.

In addition, the FCRA's state-of-mind requirement increased the difficulty of this particular case. To prevail on their claims, Plaintiff and the Settlement Class would have had to prove that any violation of the statute was willful. *See* 15 U.S.C. § 1681n(a)(1)(A). This is no easy task and requires proving, at the very least, reckless disregard of Plaintiff

---

[6] *See also Shaw v. Interthinx, Inc.,* No.: 13-cv-01229-REB-NYW, 2015 WL 1867861, at 8 (D. Colo. Apr. 21, 2015)("The billing rates for the eight attorneys and numerous staff members involved in this lawsuit range from $150 to $675 per hour and are consistent with rates in the states in which Class Counsel regularly practice.").

and Settlement Class Members' FCRA rights. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007). Proving willfulness, as a factual matter, can be particularly difficult "in the context of large corporate employers where the locus of particular decision-making is often elusive." *Stewart v. Travelers Corp.*, 503 F.2d 108, 113 (9th Cir. 1974).

Given the disputed nature of the claims, the outcome was far from certain, further supporting the requested attorney's fees. Moreover, even provided a victory in the class's favor, this Court may still have awarded class members little in the way of statutory damages, or even potentially no damages at all. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). In contrast, the relief provided by the settlement is both immediate and substantial, underscoring the reasonableness of the requested fee and expense award.

In sum, given the difficulties and skill involved with litigating this type of case, and the relative novelty of the claims, the requested fee is reasonable.

### 3.  Class Counsel Relied On Particular Skill And Experience To Properly Perform The Legal Services Required.

Where "Class Counsel's knowledge and experience . . . significantly contributed to a fair and reasonable settlement, this factor supports a request for a large number of attorneys' fees." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012). Here, Class

Counsel's knowledge of, and experience with, FDCPA class actions, helped to efficiently bring about the settlement established in this matter.

Class counsel has been appointed class counsel in dozens of class actions throughout the country in the past, including those brought under consumer protection statutes such as the FDCPA. Lyons Decl., ¶ 4, Ex. A.

### 4.    Acceptance Of This Matter Precluded Class Counsel From Taking On Other Employment.

The Consumer Justice Center P.A. is a relatively small firm that includes Class Counsel and one associate. *See* http://www.consumerjusticecenter.com. The amount of work that Class Counsel can handle at any given time is accordingly limited. Here, Class Counsel devoted significant blocks of time to this matter, at various stages of the litigation. And always throughout this matter, Class Counsel was prepared to make additional commitments as necessary. Class Counsel's efforts in connection with, and commitment to, this matter, consequently limited an ability to accept other work.

### 5.    Plaintiff And Her Counsel Entered Into An Attorneys' Fee Agreement Whereby Her Counsel Would Only Be Paid If Successful.

The requested fee award is even more reasonable considering the risks that Class Counsel assumed in undertaking the representation on a contingent fee basis. At the time Class Counsel took on this case, the outcome was far from certain, and there were very few court opinions addressing the FCRA and FDCPA in regard to the publicly filed highly confidential and statutorily protected consumer reports and what Plaintiff believed was a consumer report. To Class Counsel's knowledge, there were no such cases within the

Tenth Circuit. The lack of case law directly on point greatly increased the risk that Class Counsel would not recover a fee. As explained above, to prevail, Plaintiff would have had to prove willfulness, which means she would have had to demonstrate not only that her interpretation of the FCRA and FDCPA was correct, but that Defendant's interpretation of the statute was objectively unreasonable. *See Safeco*, 551 U.S. at 69. Defendant likely would have relied on the lack of circuit authority directly on point to argue that its interpretation of the FCRA and FDCPA as it pertains to consumer reports and what was a consumer report was not objectively unreasonable at the time of the pertinent conduct. *See id.* at 70.

The risks to recovery continued to demonstrate themselves throughout this litigation. At the outset of the case, Class Counsel was faced with a motion to dismiss, which would have disposed of the entire case if it had been granted. Class Counsel also faced additional risks, including the possibility that a class would not be certified for litigation purposes. Thus, the sixth *Johnson* factor supports the reasonableness of the requested fee.

Like many consumers bringing claims under the FDCPA, Plaintiff entered into a contingent attorneys' fee agreement with her counsel. As a result, class counsel would only receive payment for their efforts in this matter if they obtained a recovery for Plaintiff and the class. Accordingly, they have not received any payment for their work in this case to date. That the attorneys' fee arrangement here was contingent (the fifth and sixth *Johnson* factors) "weighs in favor of the requested attorneys' fees award, because [s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices

and should be appropriately considered." *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012).

The fee and expense award sought here is further justified in light of this class action, and the requested fees being well in line with—or even much lower than— those awarded in other recent successful FDCPA class actions (the twelfth *Johnson* factor). *See, e.g.*, *Schuchardt*, 314 F.R.D. at 689-90 (awarding $52,500); *Good v. Nationwide Credit, Inc.*, No. 14-4295, 2016 WL 929368, at *15 (E.D. Pa. Mar. 14, 2016) (awarding fees and expenses of $125,000); *Roundtree v. Bush Ross, P.A.*, No. 14-357, 2016 WL 360721, at *2 (M.D. Fla. Jan. 28, 2016) (awarding $170,000); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522, at *2 (E.D. Mich. Jan. 14, 2015) (awarding fees of $90,000 and expenses of $5,947.58).

Nor is the reasonableness of the requested fee and expense award undermined by its size relative to the class and Plaintiff's recoveries. To be sure, the damages awards obtained for Plaintiff and the class—$51,540 in total—were limited not by way of class counsel's efforts here, but simply as a result of the statute itself and the circumstances of Defendant's financial position. There is not a disproportion of the requested fees to the recoveries here accordingly should have no bearing on the reasonable fee awarded to counsel for their diligent work in negotiating and obtaining those recoveries. *See, e.g.*, *Renninger v. Phillips & Cohen Assocs. Ltd.*, No 10-5, 2010 WL 3259417, at *3 (M.D. Fla. Aug. 18, 2010) (refusing to proportion fee award to FDCPA damages award and collecting cases in support).

6.    **Class Counsel Is Experienced And Has A Solid Reputation.**

Class Counsel has earned a solid reputation through his experience litigating class actions and has been appointed as class counsel in a host of cases across the country. *See* Lyons Decl., Ex. A. Class Counsel's qualifications are set forth in their firm resumes and the supporting declaration. *Id.* As these qualifications demonstrate, Class Counsel is highly skilled in handling major complex litigation and have extensive experience litigating consumer class actions. Class Counsel has frequently been recognized by courts for his proficiency, expertise, and professionalism. *See Eggen v. WESTconsin,* 14-cv-873-bbc, Western District of Wisconsin (February 26, 2016). Given the caliber of Class Counsel in this case and negotiating a favorable settlement, a lump sum fee of $50,000 is reasonable and appropriate.

7.    **The Excellent Results Achieved Support The Requested Award.**

The "amount involved, and the results obtained"—the eighth *Johnson* factor—strongly supports the requested fee, as the Settlement Class's recovery is outstanding measured against the possible outcomes had the case proceeded to trial.

Here, the potential damages per Settlement Class Member for the alleged violations of the FCRA, assuming success proving their claims, ranged from $100 to $1,000. 15 U.S.C. § 1681n(a)(1). Within this range, a $100 award was the most likely outcome in the event that Plaintiff prevailed, as the record in this case does not reflect aggravating circumstances that would have made an award at the higher end of this range likely. Under the Settlement, each Settlement Class Member will receive a recovery of $75.57. Moreover, these economic benefits will be distributed to Settlement Class

Members without the need for anyone to submit a claim form. *ECF No. 34-1* - Settlement

Agreement. Assuming the Court approves the requested fees, costs, and service award, on

a net basis, each Settlement Class Member will receive $75.57 each.

This is truly an outstanding monetary recovery and is notably higher than many

other FDCPA and FCRA stand-alone disclosure settlements that courts have approved.

*See, e.g.*, *Aceves v. Autozone Inc.*, No. EDCV 14-2032-VAP (DTBx), ECF No. 58 (C.D.

Cal. Nov. 18, 2016) ($20 per disclosure class member); *Patrick v. Interstate Mgmt. Co.,

LLC*, No. 8:15-cv-1252-T-33AEP, ECF Nos. 42 & 49 (M.D. Fla. Jan. 14, 2016 & Apr.

29, 2016) ($16.40 gross recovery per disclosure class member); *Kirchner v. Shred-It USA

Inc.*, No. 2:14-cv-01437, ECF Nos. 60 & 63(E.D. Cal. Sept. 9, 2015 & Oct. 22, 2015 ($44

gross recovery per class member); *Foltz v. Guitar Center Stores, Inc.*, No. 2:14-cv-04308-

NKL, ECF Nos. 41 & 48 (W.D. Mo. July 10, 2015 & Dec. 30, 2015) ($35 gross recovery

per class member); *Landrum v. Acadian Ambulance Serv., Inc.*, No. 14-cv-1467, ECF No.

37 (S.D. Tex. Nov. 5, 2015) ($10 per disclosure class member); *Rawlings v. The Scotts

Co.*, No. 3:14-cv-319, ECF Nos. 58-1 & 61 (W.D. Mo. June 22, 2015 & July 2, 2015)

($40 gross recovery per class member); *Simons v. Aegis Comm'ns Grp., LLC*, No. 2:14-

cv-4012, ECF Nos. 24 & 32 (W.D. Mo. Aug. 11, 2014 & Jan. 15, 2015) ($33 gross

recovery per class member). Indeed, this recovery is even more impressive in light of the

significant risks at the time of Settlement.

This settlement also represents the class-wide statutory damages allowed by the

FDCPA, which are capped by statute at one percent of Defendant's net worth. *See* 15

U.S.C. § 1682k(A)(2)(B) ("in the case of a class action, (i) such amount for each named

plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector").

The members of the class who chose to participate in the settlement will each receive a check for $75.57. Considering the strengths and weaknesses of this case, as well as the statutorily-limited damages available to the class under the FDCPA, the settlement represents an excellent result for Colorado consumers, and further supports the reasonableness of the requested fee and expense award.

### 8.   No Class Members Have Objected To The Requested Fees Or Settlement.

The reasonableness of the requested fee is further evidenced by the reaction of the Settlement Class Members to the Settlement. Not a single Settlement Class Member has objected to the requested number of attorneys' fees (or any other aspect of the Settlement). This further demonstrates that the requested fees are reasonable and appropriate. *See Droegemueller v. Petroleum Dev. Corp.*, 2009 WL 961539, at *4 (D. Colo. Apr. 7, 2009) (where "*not a single one* of the 1,295 member of the Settlement Class submitted any objection to Class Counsel's request[t]he absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees"); *Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *14 (N.D. Okla. May 28, 2003) (finding that when only three of 1,074 class members objected to the fee request, the small number of objections supported the reasonableness of the fee).

9. **The Requested Award Includes The Reimbursement Of Class Counsel's Reasonable Litigation Costs And Expenses.**

The requested fee and expense award include the reimbursement of the type of expenses routinely charged to paying clients in the marketplace and, therefore, which are properly reimbursed under Rule 23. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.").

In total, class counsel has incurred reimbursable expenses in the amount of $48,180.60, as of today's date, which is not including the future work to be done on this matter. *See* Lyons Decl., ¶ 7, Ex. B. The expenses—totaling $1,611.54 are subsumed within class counsel's request for an award of $50,000 in attorney's fees and expenses. *Id.*, ¶¶ 7-9, Ex. B. (itemizing litigation costs and expenses). And this makes the requested award of attorney's fees that much more reasonable.

6. **THIS COURT SHOULD APPROVE THE AGREED UPON PAYMENT OF SERVICE AWARDS FOR THE CLASS REPRESENTATIVES.**

Finally, Plaintiff's request for a class representative service award of $5,000 is also reasonable and should be approved. Service awards are appropriate to induce individuals

to become named representatives or in order to award class representatives for the additional effort they provide for the benefit of the class. *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009). Such awards are "an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken*, 2010 WL 5387559, at *6. "Incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw*, 2015 WL 1867861, at *8 (citations omitted); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (noting that incentive awards "are fairly typical in class action cases"). Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate to induce individuals to participate in meritorious suits. *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiff has conferred a substantial benefit on the Settlement Class by initiating the instant lawsuit, without which this Settlement would not exist. The requested award is appropriate to compensate her for the time and effort she has expended to benefit the Settlement Class, including meeting with Class Counsel, reviewing case filings, producing documents, among other things. Page 6 of the Settlement Agreement provides that Plaintiff may seek an award of up to $5,000 for her role as class representative. This service award is reasonable compared to service awards approved in other class action settlements within the Tenth Circuit. *See, e.g., Lucken*, 2010 WL 5387559, at *6 (approving $10,000 award); *Droegemueller*, 2009 WL 961539, at *5 (approving a $5,000

award for each class representative); *Bruner v. Sprint/United Mgmt. Co.*, 2009 WL 2058762, at *11 (D. Kan. July 14, 2009) (approving a $5,000 service award for the named plaintiff).

Here, the Court should approve an incentive award of $5,000 for Plaintiff, in recognition of her contributions toward the successful prosecution of this litigation. Plaintiff was, in fact, the catalyst for the lawsuit and the recovery obtained through the settlement. Plaintiff's goal from the outset was to pursue this matter as a class action so that she could obtain a recovery for <u>all Colorado consumers</u> harmed by Defendant's debt collection practices. To that end, Plaintiff participated in the litigation and remained in regular contact with her attorney to make all necessary strategic decisions for her case. As a result of Plaintiff's efforts, each member of the class will receive cash compensation.

Worth noting, Defendant does not oppose a $5,000 incentive award to Plaintiff. Further, class members were provided with notice of the requested award, and no member of the class has lodged an objection to the proposed incentive award. *See In re Countrywide Fin. Corp. Customer Data Security Breach Litig.*, No. 3:08–MD–01998, 2010 WL 3341200, at *12 (W.D. Ky. Aug. 23, 2010) ("The Court notes that no objections were made as to the request for incentive awards.").

In addition, the amount requested is in line with amounts awarded in comparable cases. *See, e.g.*, *O'Brien v. Airport Concessions, Inc.*, No. 13-cv-01700-CMA-BNB, 2015 WL 232191, at *6 (D. Colo. Jan. 16, 2015) (Arguello, J.) (awarding $2,500 incentive award); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *7 (D. Colo. Dec. 22, 2010) (approving $10,000 incentive award); *Shaw*, 2015 WL 1867861, at

*8 (approving $10,000 incentive award to each named plaintiff); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031, at *25 (S.D. Ohio Feb. 7, 2014) (approving incentive award of $3,000 to each named plaintiff); *Tenuto v. Transworld Sys.*, No. CIV. A. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002) (approving incentive award of $2,000 in FDCPA class action).

Finally, the damages provision of the FDCPA supports the requested award for Plaintiff:

> (a) Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> *    *    *
>
> (2)
>     (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
>     (B) in the case of a class action, **(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and** (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

15 U.S.C. § 1692k(a) (**emphasis added**).

Thus, by its express terms, the FDCPA provides that Plaintiff can recover up to $1,000.00 in addition to such amount as each member of the class could recover. *See Bonett v. Education Debt Serv., Inc.*, No. 01–6528, 2003 WL 21658267, at *7 (E.D. Pa. May 9, 2003) ("The proposed settlement contemplates a $4,000 award from the Settlement Fund in favor of Mary Bonett, the Class representative. The award is composed of a $1,000

maximum statutory damages award, 15 U.S.C. § 1692k(a)(2)(B)(i), and $3,000 to compensate Bonett for her time, effort, and costs incurred in connection with her service to the Class. The Court feels that this award is reasonable and consistent with the range of awards made in favor of class representatives in similar cases.").

For these reasons, this Court should approve the proposed incentive award of $5,000—which is **unopposed** by both Defendant and class members.

## IV.    <u>CONCLUSION</u>

Plaintiff respectfully request the Court grant this unopposed motion for final approval and enter the proposed order granting final approval the Settlement Agreement with the requested additional language providing any funds remaining upon expiration of the 120-day deadline for cashing the Distribution checks be paid *cy pres*.  Plaintiff further respectfully requests an Order approving payment of Class Counsel's attorney's fees in the amount of $50,000, which includes any incurred costs, and a class representative service award in the amount of $5,000.00.

Respectfully submitted this 10th of May, 2019.

<u>s/Thomas J. Lyons Jr.</u>
Thomas J. Lyons Jr., Esq.
CONSUMER JUSTICE CENTER P.A.
367 Commerce Court
Vadnais Heights, MN  55127
Telephone:  651-770-9707
Facsimile:  651-704-0907
tommy@consumerjusticecenter.com

*ATTORNEY FOR PLAINTIFF
AND THE CLASS*
